**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0684-24

JERSEY SHORE BEACH AND
BOARDWALK COMPANY INC.,
a/k/a JERSEY SHORE BEACH
AND BOARDWALK, INC.,

     Plaintiff-Appellant,

v.

NEW JERSEY TIDELANDS
RESOURCE COUNCIL, NEW
JERSEY DEPARTMENT OF
ENVIRONMENTAL
PROTECTION, MATTHEW J.
PLATKIN,[1] Attorney General of
New Jersey, BOROUGH OF
KEANSBURG, and RAYMOND
O'HARE,

     Defendants-Respondents,

and

T&M ASSOCIATES,

     Defendant.

_____

---

[1] Incorrectly pled as Matt Platkin.

Argued December 3, 2025 – Decided February 9, 2026

Before Judges Gummer, Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0151-24.

R.S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, attorneys; R.S. Gasiorowski, on the briefs).

Charlie A. Stegner-Freitag, Deputy Attorney General, argued the cause for respondents New Jersey Tidelands Resource Council, New Jersey Department of Environmental Protection, and Matthew J. Platkin, Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Charlie A. Stegner-Freitag, on the brief).

Matthew R. Tavares argued the cause for respondents Borough of Keansburg and Raymond O'Hare (Rainone Coughlin Minchello, LLC, attorneys; Matthew R. Tavares, of counsel and on the brief).

PER CURIAM

Plaintiff Jersey Shore Beach and Boardwalk Company, Inc., a/k/a Jersey Shore Beach & Boardwalk Inc. (Jersey Shore), appeals from a Law Division order dismissing its complaint with prejudice for lack of subject matter jurisdiction. We conclude the judge correctly determined the Law Division did not have jurisdiction. After making that determination, however, the judge erred in dismissing the matter rather than transferring it to the Appellate Division.

2

Nevertheless, because we conclude there is no final administrative decision or action, the judge's error was harmless, and we affirm, leaving Jersey Shore to its rights under Rule 2:2-3(a)(2) and Rule 2:2-4.

We are familiar with the parties' litigation regarding the ongoing redevelopment efforts of defendant Borough of Keansburg (Keansburg).[2] As relevant to this appeal, Jersey Shore filed a complaint for "[d]eclaratory judgment, [m]andamus[,] and [i]njunction." We glean the following from Jersey Shore's complaint. Jersey Shore is the owner and operator of the Keansburg Amusement Park. "Directly abutting" Jersey Shore's property is a "tidelands" property owned by the State of New Jersey. The State's property "has for many

---

[2] See Jersey Shore Beach & Boardwalk Co. v. Borough of Keansburg, No. A-0621-23 (App. Div. Dec. 10, 2024), certif. denied, 260 N.J. 290 (2025), wherein we affirmed the trial court's order that, among other things, established Jersey Shore had no interest in Lots 3 and 3.01; Jersey Shore Beach & Boardwalk Co. v. Borough of Keansburg, No. A-2379-22 (App. Div. Jan. 13, 2025), wherein we affirmed the trial court's orders granting Keansburg, and related entities, summary judgment on Jersey Shore's complaint that Keansburg's Second Amended Redevelopment Plan facially violated the Public Trust Doctrine (PTD) and was improperly adopted and inconsistent with Keansburg's Master Plan; and In re Request for Adjudicatory Hearing on Action of Tidelands Resource Council, No. A-2198-23 (App. Div. Sept. 25, 2025), wherein we affirmed the New Jersey Department of Environmental Protection's (DEP) denial of Jersey Shore's request for an adjudicatory hearing to contest approval by the Tidelands Resource Council's (TRC) approval of a grant to Keansburg.

years been used exclusively as a 300[ plus] pay for use . . . parking lot." The lot is operated by Keansburg under a lease with the State. The "lease contains a covenant that requires" the property "only be used as a public parking lot." Jersey Shore's "patrons . . . often use th[e] . . . parking lot." In addition, the State's property has been "a long[-]time access point for the public to access the Raritan Bay waterfront and waters" and is used "to provide accessibility for the public to the beach and ocean."

Keansburg applied for a tidelands grant—a sale of the State's property to it—from the TRC. Keansburg's redevelopment plan is "to obtain clear title to the" State's property and to "transfer ownership to [a] designated developer." Jersey Shore alleged any transfer of the State's property must comply with: (1) N.J.S.A. 12:3-33 ("[g]rant of riparian lands for public park, place, street or highway") and N.J.S.A. 12:3-34 ("[c]onditions in grant"); (2) the codified PTD, N.J.S.A. 13:1D-150 to -156; (3) the rules and regulations enacted pursuant to the PTD, N.J.A.C. 7:7-9.48; and (4) public access regulations, N.J.A.C. 7:7-16.9.

The TRC "tentatively approved Keansburg's '[r]iparian [g]rant' application." "No restrictive covenant was proposed to be included in the [deed] prohibiting Keansburg from permanently destroying the existing approximately

A-0684-24

300[ plus] public parking spaces."  Moreover, "no restrictive covenant was to be included in the [deed] prohibiting the building . . . of a private entity high density apartment complex or of other uses contrary or not in compliance with the public trust in said property."  According to plaintiff, "the sale price of $1,591,173[] is arbitrary and well below fair market value."  At the time of the filing of the complaint, the application for the riparian grant was before the Attorney General "for review and final approval."

Jersey Shore sought a declaration that the cited statutes and regulations applied to Keansburg's application and any transfer of the property from the State.  Further, it sought to enjoin Keansburg "from ever permitting, approving or allowing any interference with or closing or limiting use of the existing approximately 300[ plus] public parking spaces" and "from ever implementing and/or permitting, approving or allowing any redevelopment plan that uses the . . . property . . . for anything other than a public parking location and/or public trust purposes."

In addition, Jersey Shore alleged the tentative approval "of Keansburg's [a]pplication was predicated on clear misrepresentations, failures to disclose, and legal errors in [the] decision making process" and those "errors [we]re being perpetuated during the review and final approval by . . . [the] Attorney General

5

. . . and all such decisions are arbitrary, capricious and unreasonable." Jersey Shore sought:

> An [o]rder in the way of [m]andamus directing defendants . . . to condition any "[r]iparian [g]rant" . . . of the . . . property . . . with the requirement that the [deed] of transfer contains a permanent [deed] restriction and covenant prohibiting Keansburg or any successors in interest from ever and in any way interfering with the continued use of the . . . property . . . as an existing and continuing public parking location with approximately 300[ plus] public parking spaces . . . and/or a [deed] restriction and covenant prohibiting Keansburg or any successors in interest from ever building any private commercial structures at the location of the existing 300[ plus] public parking spaces.
>
> In the alternative, an [o]rder in the way of [m]andamus directing defendants . . . to condition any "[r]iparian [g]rant" sale of the subject property . . . to . . . Keansburg on a proper revised valuation of the subject property based upon the present income generated by the existing 300[ plus] public parking spaces; and/or its highest and/or best use for legal development as per [t]idelands [l]aw and/or the [r]edevelopment [p]lan.

Defendants moved to dismiss the complaint arguing the Law Division lacked subject matter jurisdiction. The judge recognized a constitutional right to judicial review of an agency's action or inaction. However, the court concluded Rule 2:2-3 and Rule 2:2-4 vest exclusive jurisdiction for such review with the Appellate Division. The judge noted a matter may be dismissed

6

pursuant to Rule 4:6-2(a) for lack of subject matter jurisdiction and dismissed the matter with prejudice.

On appeal, Jersey Shore contends the court erred because: (1) it had standing and a legal right to judicial review in the Law Division because the DEP's and TRC's ongoing review process was infringing upon the rights proscribed to Jersey Shore by the PTD; (2) until the Attorney General and the DEP Commissioner fulfill their roles in the administrative process, no final decision has been rendered; thus, there is no right to appeal nor exclusive jurisdiction under Rule 2:2-3(a)(2); and (3) its complaint should have been dismissed without prejudice.

"Whether subject matter jurisdiction exists presents a purely legal issue . . . which we review de novo." Beaver v. Magellan Health Servs., Inc., 433 N.J. Super. 430, 437 (App. Div. 2013) (quoting Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156-57 (App. Div. 2012)).

The New Jersey Constitution provides that "[t]he Superior Court shall have original general jurisdiction throughout the State in all causes." N.J. Const. art. VI, § 3, ¶ 2. Thus, the Superior Court of New Jersey is a court of general jurisdiction, having subject matter jurisdiction over all claims, subject to limited exceptions. One such exception is where an agency is granted exclusive

7

jurisdiction over a particular matter.  See Pressler & Verniero, Current N.J. Court Rules, cmt. 2.6 on R. 4:6-2 (2026) ("Where the defense of lack of subject matter jurisdiction is based on exclusive initial agency jurisdiction, the action should be transferred to that agency . . . .").

The Appellate Division is vested with jurisdiction to review final decisions and actions of a State administrative agency or officer.  Rule 2:2-3(a)(2) states that an appeal may be taken as of right:  "to review final decisions or actions of any [S]tate administrative agency or officer, . . . except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise[.]"  The Rule "contemplate[s] that every proceeding to review the action or inaction of a [S]tate administrative agency would be by appeal to the Appellate Division."  Vas v. Roberts, 418 N.J. Super. 509, 516 (App. Div. 2011) (quoting Pascucci v. Vagott, 71 N.J. 40, 52 (1976)) (internal quotation marks omitted).

Generally, a decision or action of a State administrative agency is "considered final if it disposes of all issues as to all parties."  Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 136 (2016).  "Another feature of a final agency decision is the absence of or exhaustion of all 'avenues of internal

administrative review.'" Id. at 136-37 (quoting Bouie v. N.J. Dep't of Cmty. Affs., 407 N.J. Super. 518, 527 (App. Div. 2009)). "Final agency action is also characterized by findings of fact, conclusions of law, a definitive ruling, and a clear statement that the interested party may seek review of the decision and the manner in which that may be accomplished." Id. at 139.

Moreover, "the Appellate Division may grant leave to appeal, in the interest of justice . . . from an interlocutory decision or action of a [S]tate administrative agency or officer." R. 2:2-4.

"The []DEP is an agency of the State of New Jersey[.]" State v. Bernardi, 456 N.J. Super. 176, 188 (App. Div. 2018) (citing N.J.S.A. 13:1D-1). The TRC is established within the DEP. N.J.S.A. 13:1B-10. Also, the Attorney General and the Secretary of State are "officers" under Rule 2:2-3(a)(2); thus, their actions are subject to the Rule. See Prado v. State, 186 N.J. 413, 422 (2006) ("There is no question that the Department of Law and Public Safety is a [S]tate administrative agency and the Attorney General a [S]tate officer for purposes of Rule 2:2-3(a)(2). It therefore follows that an appeal from a final administrative decision of the Attorney General rests in the Appellate Division . . . ."); see Gormley v. Lan, 181 N.J. Super. 7, 10 (App. Div. 1981) ("[T]he action of the Secretary of State . . . was a final decision or action of a [S]tate administrative

officer and consequently was appealable to this court as a matter of right."

(Citing R. 2:2-3(a))).

Under N.J.S.A. 12:3-12.1:

> The Legislature finds and declares that the [TRC] is the public body responsible for the stewardship of the State's riparian lands; that it is the responsibility of the council to determine whether applications for the lease, license, or grant of riparian lands are in the public interest; that it is the responsibility of the council to determine, in assessing applications for the lease, license, or grant of riparian lands, whether the State may have a future use for such lands; that the council must obtain the fair market value for the lease, license or grant of riparian lands in accordance with court decisions and legal opinions of the Attorney General; and that the substantive policies adopted by the council and information about the roles of the council and the tidelands management program within the [DEP] in requiring, reviewing, and processing applications for the lease, license, and grant of riparian lands should be made readily available to the general public and should be provided to those who apply for permission to use riparian lands.

"The [TRC], with the approval of the Commissioner of [the DEP], may . . . grant the lands of the State . . . ." N.J.S.A. 12:3-23. Any grant must be "approved and signed by the Commissioner of [the DEP] and the Attorney General." N.J.S.A. 13:1B-13. The "conveyance" must be "attested by the Secretary of State." N.J.S.A. 12:3-7.

"Subject matter jurisdiction involves 'a threshold determination as to whether [a court] is legally authorized to decide the question presented.'" Robertelli v. N.J. Off. of Att'y Ethics, 224 N.J. 470, 481 (2016) (alteration in original) (quoting Gilbert v. Gladden, 87 N.J. 275, 280-81 (1981)). Thus, "[w]hen a court lacks subject matter jurisdiction, its authority to consider the case is 'wholly and immediately foreclosed.'" Ibid. (quoting Gilbert, 87 N.J. at 281). "It is well established 'that a court cannot hear a case as to which it lacks subject matter jurisdiction.'" Borough of Closter v. Abran Demaree Homestead, Inc., 365 N.J. Super. 338, 352 (App. Div. 2004) (quoting Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 65 (1978)). A party may file a motion to dismiss based on lack of subject matter jurisdiction at any time. R. 4:6-2(a).

Applying this well-established law, we conclude Jersey Shore's first two arguments have no merit. First, its argument that the tidelands grant application process was ongoing, and, therefore, it was not seeking a "review [of] final decisions or actions," under Rule 2:2-3(a)(2), is misplaced. Given that the tidelands grant application process was ongoing and subject to additional required approvals, rendering it not final, the Law Division did not have jurisdiction to entertain an interlocutory review of the process. Instead, Rule 2:2-4 vests the Appellate Division with the authority to "grant leave to

11

appeal, in the interest of justice, . . . from an interlocutory decision or action." Therefore, whether the TRC's action is final, under Rule 2:2-3(a)(2), or interlocutory, under Rule 2:2-4, jurisdiction is vested in the Appellate Division.

Jersey Shore's second argument fails for the same reasons as its first. In its second argument, it contends the Attorney General has yet to complete its function, so the TRC's actions are not final and there is no right to appellate review under Rule 2:2-3(a)(2). However, that argument assumes the Law Division has jurisdiction for ongoing or interlocutory challenges to administrative agency actions. The Appellate Division is vested with jurisdiction under those circumstances pursuant to Rule 2:2-4.

Lastly, Jersey Shore contends its complaint "could and should have been deferred or dismissed without prejudice" to "avoid any jurisdiction issue or violation of R[ule] 2:2-3(a)."

Rule 1:13-4(a) provides:

> [I]f any court is without jurisdiction of the subject matter of an action or issue therein . . . it shall, on motion or on its own initiative, order the action, with the record and all papers on file, transferred to the proper court, . . . in the State. The action shall then be proceeded upon as if it had been originally commenced in that court.

"The rule thus requires that the court on its own initiative transfer the action," Townsend v. Great Adventure, 178 N.J. Super. 508, 517 (App. Div. 1981), which in this case would be to the Appellate Division.  A transfer, rather than dismissal, "is particularly [favored] because a dismissal [may] cause[ a] claim to be barred without an adjudication on the merits, certainly a result not to be favored."  Id. at 518.  Here, the matter should have been transferred to the Appellate Division rather than dismissed with prejudice by the Law Division.

Having concluded the matter should have been transferred to the Appellate Division, rather than dismissed, we are left with conflicting views on the status of the TRC's grant approval, and whether the TRC's action was a final agency decision under Rule 2:2-3(a)(2).

Jersey Shore argues "the Keansburg [a]pplication for a [r]iparian [g]rant and the TRC's preliminary approval of such [g]rant is simply not 'final.'"  Instead, the "TRC's preliminary approval is only one component of a multifaceted review and ongoing administrative approval process that ultimately requires the affirmative review and approval of other additional agencies and officials before that preliminary approval of the [r]iparian [g]rant becomes 'final.'"

13

The State[3] contends Jersey Shore's complaint "is based on the actions of the TRC, as approved by the DEP. In other words, an appeal of a final administrative action." (Footnote omitted) (citation omitted) (citing N.J.S.A. 13:1-B-13). However, the State also contends Jersey Shore "acknowledges that the final issuance of a riparian grant is a multi[]faceted review that is not yet complete." Indeed, the State notes Jersey Shore "is seeking review over a matter that by its definition is not final and thus is not yet ripe for judicial review and was properly dismissed."

Keansburg contends "[a]t issue here is [Jersey Shore]'s challenge to the decision of the TRC to approve . . . [Keansburg]'s tidelands grant application. This is fundamentally a final agency decision." However, Keansburg also notes "if we agreed with [Jersey Shore]'s position that the decision of the TRC . . . is only a 'preliminary' and not a final decision, then any challenge would not yet be ripe for review."

We conclude the TRC's action was not a final agency decision under Rule 2:2-3(a)(2). Indeed, the parties acknowledge other actors, the DEP

---

[3] We use the term "State" to collectively refer to defendants the TRC, the DEP, and the Attorney General.

A-0684-24

Commissioner, the Attorney General, and the Secretary of State must still act before the grant is final.

Therefore, under these circumstances, the grant is still subject to "internal administrative review," Silviera-Francisco, 224 N.J. at 137, and the State must still issue "findings of fact, conclusions of law, a definitive ruling, and a clear statement that the interested party may seek review of the decision and the manner in which that may be accomplished." Id. at 139.

Consequently, although the court should have transferred the matter to the Appellate Division once it determined the Law Division lacked subject matter jurisdiction, see R. 1:13-4(a), we conclude the error was harmless because there was no "final decisions or actions of any state administrative agency or officer," under Rule 2:2-3(a)(2).

While we offer no opinion on its merits, Jersey Shore is left to act under Rule 2:2-3(a)(2) at the appropriate time, or, if it seeks interlocutory review, it can file a motion with the Appellate Division under Rule 2:2-4.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

15